The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Willis. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except with the minor modification of the Conclusion of Law.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at and after the hearing as:
STIPULATIONS
1. Prior to the 5 December 1994 hearing, an Order was filed by Deputy Commissioner W. Joey Barnes, dated 11 August 1994 which is incorporated by reference as though fully restated herein.
2. At the hearing the deposition of Dr. James Franklin Keel, III was introduced and received into evidence. Following the initial hearing, the deposition of Sharon Cardona was submitted and is hereby made a part of the record of this case; and all objections raised by counsel at both depositions are hereby OVERRULED.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was 47 years old, with a date of birth of 14 May 1947. Plaintiff was the mother of six children, and her husband was collecting disability compensation at the time of the hearing. For plaintiff's work history she had been a housekeeper and was a certified nursing assistant. Plaintiff smoked about one and a half packs of cigarettes per day. For her medical history, plaintiff had contracted hepatitis B in 1980 which was related to IV drug abuse.
2. Plaintiff began working for defendant on 23 August 1993 as an inspector. She stopped working for defendant at the end of December 1993, after working there for about four months. Additionally, she has not returned to work nor sought any gainful employment since that time. At the time of the initial hearing, plaintiff was enrolled in a beautician school, with her courses scheduled to finish in September 1995.
3. Plaintiff worked third shift for the defendant. In the early morning of 9 December 1993, about three hours before her shift ended, plaintiff was struck by a cart which was being pushed by a co-worker. This event was fairly minor, and plaintiff did not report it to any supervisor. Plaintiff testified that she lost consciousness for a few minutes after the incident, but she had not reported losing consciousness in any prior description of the incident. Plaintiff completed her shift after the incident.
4. In mid-December 1993, plaintiff quit her job with defendant. Bill Willett asked plaintiff why she was quitting, and plaintiff said she was leaving because she did not like the job and she did not like working third shift. The next morning Dean Fisher, another supervisor, asked plaintiff why she was quitting. Plaintiff told Mr. Fisher that she was quitting because she did not like working third shift. Plaintiff did not report any injury to either supervisor, and she did not appear to be sick or in any discomfort.
5. On 15 December 1993, plaintiff went to the Mountain Area Family Health Center for medical treatment. Plaintiff reported left sided chest and back pain. Plaintiff reported that she had not been injured, but that her condition might be caused by lifting 50 pound rolls of fabric at work. Plaintiff was treated with anti-inflammatory and pain medication. On 17 December 1993, she returned to the clinic; and several tests were ordered, including a test for tuberculosis.
6. On 27 December 1993, plaintiff first related her symptoms to the incident in which she was struck by a cart at work. Prior to this time, plaintiff and her doctors had not considered trauma as a possible cause of her chest complaints, and no doctor had mentioned bruising or any sign of trauma. Plaintiff first told her doctors that the pain had begun two weeks after the incident. She would later tell Dr. Keel that the pain had begun immediately after the incident, and she would testify at the hearing that the pain had begun four days after the incident. Her testimony that the pain began four days later would be consistent with the fact that she first sought medical treatment six days after the incident; and therefore, the Full Commission finds that plaintiff began to experience pain four days after the incident.
7. When plaintiff's condition did not improve, she was referred to Dr. James Keel, III. A large part of Dr. Keel's practice involves pulmonary medicine, although Dr. Keel is not board certified in this specialty. At the time plaintiff was examined by Dr. Keel, she suffered from a collection of fluid in the left pleural space, which is between the lung and the chest wall. Dr. Keel was of the opinion that the collection of fluid was caused by trauma resulting from the incident at work, because plaintiff told him that she had experienced chest pain immediately after the incident and continuing. If the collection of fluid was caused by trauma, Dr. Keel would have expected chest pain to begin within twenty-four hours.
8. Tests which Dr. Keel performed indicated that plaintiff's condition was not caused by trauma. For example, there was no blood in the collected fluid, although Dr. Keel would expect blood to be in the fluid if its collection had been caused by trauma; and blood test results were mildly abnormal which would indicate an autoimmune cause for her condition. In addition, during her initial treatment, plaintiff's condition deteriorated, although Dr. Keel would expect her condition to gradually improve as time passed from the time of the trauma. Dr. Keel was "surprised" at this course her condition took.
9. Dr. Keel recommended that plaintiff be examined by Dr. Jill Vargo. Dr. Keel suspected that plaintiff's condition could be caused by "connective tissue disease," and this area of medicine is Dr. Vargo's specialty. Plaintiff refused treatment by Dr. Vargo; and therefore, Dr. Vargo's investigation as to this possible cause of plaintiff's condition could not be undertaken.
10. Considering Dr. Keel's testimony as a whole, the Full Commission finds limited weight in his opinion that plaintiff's condition might be caused by the incident at work. This finding is based on the very tentative nature of Dr. Keel's opinion, on the fact that test results and the course of her condition indicate a cause other than trauma, and plaintiff gave Dr. Keel an inaccurate medical history. Because of the limited weight of Dr. Keel's opinion and because plaintiff refused treatment which could have confirmed whether her condition was caused by connective tissue disease, the Full Commission finds that there is insufficient evidence of record from which the Full Commission can find that the incident at work on 9 December 1993 caused an injury.
11. Plaintiff testified that the incident on 9 December 1993 was serious enough to cause her to lose consciousness for a few minutes and that the incident caused severe impairments which have caused her to be unable to be gainfully employed at any job from shortly after the incident and continuing indefinitely. The Full Commission finds that plaintiff's testimony is not credible. Regarding the incident: plaintiff did not tell any doctor that she lost consciousness, plaintiff did not report the incident to any supervisor, and shortly after the incident plaintiff told her supervisors she was leaving because she did not like her job, and did not report any injury or sickness. Regarding her physical condition: Dr. Keel released plaintiff to return to work with no restrictions in April 1994 and by his examination of August 1994, her condition was completely healed.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
While there was an incident at work in which plaintiff was struck by a cart on 9 December 1993, the condition of which plaintiff complains did not flow from this incident nor is the condition of which she complains causally related to this incident. Thus, plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for compensation pursuant to the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Each side shall pay their own costs, except that defendant shall pay an expert witness fee in the amount of $300.00 to Dr. Keel, if not already paid.
 S/ __________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _________________ LAURA K. MAVRETIC COMMISSIONER